UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**CV 07 2883**

| | |
|---|---|
| HABITAT, LTD., | Index No. _____ |
| Plaintiff, | |
| v. | COMPLAINT |
| THE ART OF THE MUSE, INC. d/b/a OLY STUDIO and MECOX GARDENS & POTTERY, INC., | |
| Defendants. | |

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUL 16 2007 ★

LONG ISLAND OFFICE

HURLEY, J.

LINDSAY, M.

Plaintiff Habitat, Ltd. ("Habitat") through its attorneys, The S. A. Jackson Law Firm, P.C., as and for its complaint states as follows:

### NATURE OF ACTION

1.      This is an action seeking damages including treble damages, attorneys' fees and costs for defendants' violations of the Sherman Act §1 and §2, the Donnelly Act of the State of New York, Breach of Contract, and for causing plaintiff's Detrimental Reliance and Interfering with Commercial Relations.

2.      Plaintiff is a domestic retailer of antique and faux antique furniture in the locality of Suffolk County, NY. Defendant Art of the Muse, Inc. d/b/a Oly Studio (hereinafter "Oly") is a manufacturer and distributor of faux antique furniture ("Oly's Products"). At the time Oly discontinued its sales to Habitat, Habitat dealt almost exclusively with Oly in regard to buying faux antique furniture for resale in the Suffolk County, NY market and planned to exclusively buy from Oly for a new store it was in the process of opening. Plaintiff has suffered damages at the hands of defendants Oly and

Mecox Gardens & Pottery, Inc. ("Mecox") because Oly entered into an agreement(s) with

Mecox, a retail competitor of plaintiff, to discontinue sale of Oly's Products to plaintiff

without notice, with the intent to boycott and cause damage to plaintiff, restrain trade,

achieve or maintain monopoly power in the faux antique furniture retail market in

Suffolk County, NY. Defendants' actions also resulted in breach of contract, plaintiff's

detrimental reliance and interference with commercial relations.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the instant matter based on a federal

question pursuant to the Sherman Act – 15 U.S.C. § 1 and 15 U.S.C. § 2, and the

Donnelly Act – N.Y. Gen. Bus. Law § 340.

4.      This Court has pendent jurisdiction over the common law and state law

claims in the instant matter pursuant to 28 U.S.C. § 1367 and § 1391(b) because

defendants transact business in Suffolk County, NY.

5.      No prior litigation concerning this controversy has been commenced by

any party to this litigation.

## PARTIES

6.      Habitat is a Sub-chapter S corporation having its principal place of business

in Suffolk County, NY. Plaintiff operates and has operated for more than 10 years an

antique furniture retail store in Water Mill, NY known as Donna Parker Habitat, Ltd, (the

"Original Store") and only in the last three years has it entered the faux antique furniture

retail market. Plaintiff has recently opened a second retail store known as Donna Parker

East in Bridgehampton, NY (the "New Store").

7.      Donna Parker ("Parker") is the president of Habitat.

2

8.      Upon information and belief, The Art of the Muse, Inc. is a California corporation doing business as Oly Studio. Oly maintains an office at 2222 Fifth Street, Berkeley, CA 94710 and is engaged in the business of manufacturing and distributing faux antique furniture from its distribution centers in California and elsewhere to Suffolk County, NY.

9.      Upon information and belief, Robert Sleight ("Sleight") is director of The Art of the Muse Inc. d/b/a Oly Studio.

10.     Upon information and belief, Mecox is a large retailer of home furnishings including Oly's Products, operating at least seven (7) retail stores nationwide including at least two (2) in the locality of Suffolk County, NY at Southampton and East Hampton and another retail store in New York City, NY, making it a major competitor of plaintiff.

11.     Upon information and belief, Mecox is Oly's largest or one of Oly's largest accounts and purchases a significant amount of Oly's Products for resale to consumers in Suffolk County, NY from Oly.

12.     For more than three (3) years Habitat and other faux antique furniture dealers in Suffolk County, NY have purchased Oly's Products in small quantities relative to Mecox for the purpose of resale to consumers.

13.     Habitat has dealt almost exclusively with Oly with regard to the purchase of faux antique furniture for resale to consumers in Suffolk County, NY.

14.     Heretofore and sometime between January and March 2007, Oly, Mecox and other persons or corporations to the plaintiffs unknown, upon information and belief, engaged in a concerted effort to boycott plaintiff, conspired together to stop the sale of Oly's Product to plaintiff in restraint of trade for the purpose of achieving or maintaining

3

a monopoly for the sale of Oly's Product in Suffolk County, NY and for the purpose and intent of injuring the trade and business of the plaintiff and depriving plaintiff of profit or gain in Suffolk County, NY. Oly thereby breached its contract with plaintiff and caused plaintiff damages for its detrimental reliance on Oly's promises. In its conspiracy with Oly, Mecox interfered with plaintiff's commercial relations with Oly.

## FACTS

15. Oly is an industry leader for the manufacture and distribution of faux antique furniture because of the superior design, reasonable price and quality of its Products. Oly's Products are highly-sought-after pieces in the current market. Oly's Products are a fresh blend of clean lines and antique motifs synchronizing traditional with contemporary. Oly's Products are hand-crafted, unique and are considered a "must-have" for any serious retailer or decorator of faux antique furniture in the current market; in fact defendant's Products make a market in and of themselves. No other company rivals the quality, pricing or the extent of Oly's Products. As of the date of this Complaint, Oly's products have appeared in more than 30 highly regarded magazines which recommend home furnishings including The Oprah Magazine, In Style Magazine, House Beautiful, Elle Decor and The Hamptons Magazine in the year 2007 alone.

16. Plaintiff's Original Store was established more than a decade ago as an ideal destination for consumers in the locality of Suffolk County, NY to find the highest quality antique furniture. Recently, faux antique furniture has become extremely popular and in keeping with its reputation for providing consumers in said locality with high-quality furniture with an antique motif, plaintiff in 2004 contracted with Oly to add Oly's

4

Products to its retail inventory. In less than three years it generated more than $350,000 in revenue from Oly's Products alone.

17.     Habitat first contracted with Oly in January of 2004 to purchase Oly's Products when plaintiff operated only the Original Store. In 2004 Habitat ordered $21,744.54 worth of merchandise in 2004 and $18,613.12 worth of merchandise in 2005, which it sold at retail for about three times (3x) the purchase price from Oly.

18.     Due to the popularity of Oly's Products at its Original Store in Suffolk County, NY and relying to its detriment on the promise by Oly to Habitat that Oly would supply it with Oly's Products, Habitat in 2006 prepared to open a New Store exclusively for Oly's Products in the same locality and planned to order $100,000 worth of Oly's Products for the New Store in addition to the $75,563.60 worth of Oly's Products it had already purchased for the Original Store.

19.     On or about December 18, 2006, relying to its detriment on Oly's promise to Habitat to supply it with Oly's Products, Habitat signed a six (6) year lease at the total cost of $500,000 and renovated the space for an additional $250,000.00 plus insurance costs to operate the New Store in Bridgehampton, NY in Suffolk County, NY for the exclusive sale of Oly's Product.

20.     In January of 2007 Habitat placed an order for $27,670.91 worth of Oly's Products for the New Store.

21.     On or about January 28, 2007, Donna Parker ("Parker"), president of Habitat met Robert Sleight ("Sleight"), director of Oly at the New York Gift Show and Parker informed Sleight that Habitat was opening a New Store for Oly's Products and would soon be ordering an additional $100,000 worth of Oly's Products to stock the New

Store. Sleight told Parker that in light of Habitat's expansion he would have to secure permission from third-party Mecox in order to continue to sell Oly's Products to Habitat.

22.    Upon information and belief, at some time between January and March 2007, Oly consulted with Mecox regarding whether Oly could continue selling Oly's Products to Habitat at all in light of plaintiff's expansion.

23.    On or about March 9, 2007, after consulting with Mecox and before Habitat could place any additional orders with Oly for Oly's Products, Oly sent a letter to Habitat terminating their business relationship effective that date, thereby breaching its contract with plaintiff and causing plaintiff damages for its detrimental reliance on Oly's promise to supply it with Oly's Products. By unlawfully inducing Oly to discontinue its sale of Oly's Products to plaintiff, Mecox tortiously interfered with plaintiff's commercial relations.

24.    As a result of Oly's unlawful termination of the business relationship between Oly and Habitat, Habitat was forced to exit the business of selling faux antique furniture at its retail stores and was caused a great loss of current and future revenue.

25.    As a result of Oly's unlawful termination of the business relationship between Oly and Habitat, Mecox achieved or attempted to achieve and maintain monopolistic power over the Suffolk County, NY market for Oly's Products.

26.    Oly in concert with Mecox engaged in boycotting plaintiff with the intent to mutually benefit and for Oly and Mecox to maintain their monopolistic power over the Suffolk County, NY market.

27.    Oly did undertake and agree with Mecox to restrict the sale and distribution of Oly's Products to Habitat in Suffolk County, NY with the intent of

6

injuring the trade and business of the plaintiff and to unreasonably restrain interstate commerce in the United States. These are continuing violations and will continue unless the relief prayer is granted.

28.     Oly and Mecox engaged in group meetings, shared confidential business and financial information and in effect "merged" the companies with the intent to use their enormous market power to prevent competition in Suffolk County, NY, drive plaintiff out of the faux antique furniture business in said locality, retain control over the Suffolk County, NY market for said products by "black listing" plaintiff from Oly products with the intent of driving plaintiff out of the faux antique furniture retail business in said locality and discouraging other retailers in the faux antique furniture business from expanding. In doing so Oly and Mecox deliberately and unlawfully created and/or attempted to create and maintain a monopoly.

29.     Defendants' actions caused plaintiff to discontinue the retail sale of Oly's Products and defendants knew of and intended that to be the result of their actions.

30.     The combination of Oly's interest with Mecox and defendants' resulting conduct constitutes an unreasonable restraint of trade that is both unlawful *per se* and under the rule of reason; and defendants by their aforementioned actions have engaged in coercive tactics, boycotts and schemes that are *per se* unreasonable and unlawful under the rule of reason.

31.     Defendants' actions have harmed consumers in Suffolk County, NY in that consumers have less market options for the purchase of Oly's Products because plaintiff, a retail competitor of Mecox has been forced out of the business of selling Oly's Products in Suffolk County, NY and other small competitors in that locality may not seek

to purchase larger orders of Oly products for resale for fear of having their purchase

agreements similarly terminated. Defendants consciously committed to a common

scheme to achieve an unlawful objective with the intent to adhere to that common scheme

in order to achieve an unlawful objective.

## AS AND FOR A FIRST CAUSE OF ACTION
## SHERMAN ANTITRUST ACT § 1
## *PER SE* VIOLATION AGAINST BOTH DEFENDANTS

32.     Plaintiff repeats and realleges the allegations contained hereinabove.

33.     Defendants Oly and Mecox engaged in interstate commerce in that Oly

engaged in the business of manufacturing faux antique furniture in California and

distributing them to retail stores in the locality of Suffolk County, NY including to

Mecox and plaintiff.

34.     Defendants Oly and Mecox violated Section 1 of the Sherman Antitrust

Act (15 U.S.C. § 1) by contracting and conspiring with each other to restrain the trade of

Oly's Products in the locality of Suffolk County, NY in the United States by

discontinuing the sale of said products to plaintiff, a competitor of Mecox who had

purchased said products from Oly for several years.

35.     Defendants Oly and Mecox violated Section 1 of the Sherman Antitrust

Act (15 U.S.C. § 1) by engaging in an unlawful boycott of plaintiff in the United States.

Oly and Mecox have dominated the faux antique furniture market in the locality of

Suffolk County, NY for many years and used this control over said market to unduly

enhance their economic position and reduce their risks and costs of doing business.

36.     Despite the fact that plaintiff was a customer of Oly, Oly colluded with

Mecox to drive plaintiff out of the faux antique furniture market in Suffolk County, NY

by discontinuing the sale of Oly's Products to plaintiff in order to enhance its overall competitive position in said locality by forging a stronger business relationship with Mecox, a larger purchaser of Oly's products than plaintiff. Mecox colluded with Oly in said market of said locality by inducing Oly to discontinue the sale of Oly's Products to plaintiff in order to enhance its overall competitive position by eliminating a competitor. Defendants' actions have reduced the number of faux antique furniture retailers competing in the aforementioned market and have controlled the market by discouraging other smaller retailers in said market from expanding.

37.     As a consequence of defendants' unlawful sharing of confidential business information with each other and their resulting anti-competitive boycott, plaintiff has been driven out of the faux antique furniture market. Plaintiff would have been able to continue selling said products had defendant operated in a legal, competitive manner. The confidential business information exchanged among defendants extends beyond mere sharing of publicly available information.

38.     Defendants acted with malice and with the intent to control the market.

39.     The agreement(s) Oly entered into with Mecox was an agreement(s) in restrain of trade in violation of 15 U.S.C. § 1, with intent to achieve anti-competitive effects, and each one was, *per se*, a violation of the Sherman Antitrust Act.

40.     As a direct result of defendants' conduct, plaintiff has been damaged in an amount to be determined at trial but not less than $30,000,000.00 including treble damages, plus interest, costs and reasonable attorneys' fees.

## AS AND FOR A SECOND CAUSE OF ACTION
## SHERMAN ANTITRUST ACT § 1
## RULE OF REASON VIOLATION AGAINST BOTH DEFENDANTS

41.     Plaintiff repeats and realleges the allegations contained hereinabove.

42.     The agreement(s) Oly entered into with Mecox was an agreement in violation of 15 U.S.C. § 1, intending to achieve anti-competitive effects. The agreement(s) violate the Sherman Antitrust Act under the Rule of Reason because its anti-competitive effects outweigh its pro-competitive effects.

43.     As a direct result of defendants' conduct, plaintiff has been damaged in an amount to be determined at trial but not less than $30,000,000.00 including treble damages, plus interest, costs and reasonable attorneys' fees.

### AS AND FOR A THIRD CAUSE OF ACTION
### SHERMAN ANTITRUST ACT § 2
### AGAINST DEFENDANT MECOX ONLY

44.     Plaintiff repeats and realleges the allegations contained hereinabove.

45.     Mecox, by combining and conspiring with Oly, obtained monopoly power and/or possessed a dangerous probability of achieving or maintaining monopoly power in the United States in the Suffolk County, NY market, specifically for the faux antique furniture segment of the market. Through their combination and conspiracy with each other, Defendants effectively control that market, particularly which retail stores succeed and fail in that market because they have sufficient power to determine which retail stores receive Oly's Products and which do not.

46.     Mecox engaged in the acts and practice alleged herein with the specific intent to achieve or maintain monopoly power in the affected market, namely the faux antique furniture market in Suffolk County, NY.

47.     Mecox has violated Section 2 of the Sherman Act, 15 U.S.C. § 2 because it has acted with specific intent to achieve or maintain monopoly power in the faux

antique furniture market by combining and conspiring with Oly and unlawfully utilizing its resulting economic leverage in the locality of Suffolk County, NY to drive out faux antique furniture retailers that would potentially reduce its market share.

48.    As a direct and foreseeable result of Mecox's unlawful conduct, plaintiff has been damaged to their property in an amount to be determined at trial but not less than $30,000,000.00 including treble damages, plus interest, costs and reasonable attorneys' fees.

### AS AND FOR FOURTH CAUSE OF ACTION
### DONNELLY ACT VIOLATION
### AGAINST BOTH DEFENDANTS

49.    Plaintiff repeats and realleges the allegations contained hereinabove.

50.    Defendants Oly and Mecox, through their contract, agreement, arrangement, conspiracy and combination with each other have restrained and continue to restrain trade and competition in the retail market for faux antique furniture in the locality of Suffolk County, NY in violation of the Donnelly Act, N.Y. Gen. Bus. L. §340. The intent, purpose and effect of their actions was to achieve the aforesaid anti-competitive effects.

51.    Defendants Oly and Mecox entered into a contract, agreement, arrangement, conspiracy and combination with each other to terminate Oly's previous business relationship with plaintiff and to discontinue the sale to plaintiff of Oly's Products in order to increase the market share for the sale of said products in said locality of Mecox, defendant's largest customer and competitor of plaintiff. This unlawful contract, agreement, arrangement and combination between Oly and Mecox violates the

11

Donnelly Act *per se* and/or because said agreement's pro-competitive effects, if any, are outweighed by its anti-competitive effects and purpose.

52.     In effectuation of the contract, agreement, arrangement, conspiracy and combination between Oly and Mecox, defendants deliberately and intentionally engaged in various acts, behavior and practices, including but not limited to causing Oly's previous business relationship with plaintiff to be terminated and discontinuing the sale of Oly's products to plaintiff.

53.     As a direct and foreseeable result of defendants' unlawful conduct, plaintiffs have been damaged in their property in an amount to be determined at trial but not less than $30,000,000.00 including treble damages, plus interest, costs and reasonable attorneys' fees.

## AS AND FOR A FIFTH CAUSE OF ACTION
## BREACH OF CONTRACT
## AGAINST DEFENDANT OLY ONLY

54.     Plaintiff repeats and realleges the allegations contained hereinabove.

55.     Plaintiff entered into a binding agreement with Oly in which Oly was to supply plaintiff with Oly's Products for resale in Suffolk County, NY, and in exchange plaintiff agreed to pay defendant a price fixed by Oly for those products.

56.     Plaintiff at all times since beginning its business relationship with Oly ordered Oly's Products and paid Oly for those products.

57.     Upon information and belief, Oly intentionally breached its agreement with plaintiff by terminating its business relationship with plaintiff without notice, effectively extinguishing plaintiff's business of selling faux antique furniture.

12

58.    As a result of this breach, plaintiff has damages which include, but are not limited to, $10,000,000.00

59.    Accordingly, Defendant Oly is liable for breach of contract in an amount to be determined at trial, but not less than $10,000,000.00, plus interest, costs and reasonable attorneys' fees.

### AS AND FOR A SIXTH CAUSE OF ACTION
### DETRIMENTAL RELIANCE
### AGAINST DEFENDANT OLY ONLY

60.    Plaintiff repeats and realleges the allegations contained hereinabove.

61.    Defendant Oly promised to supply plaintiff with Oly's Products for resale in Suffolk County, NY, and in exchange plaintiff agreed to pay defendant the price fixed by Oly.

62.    Plaintiff relied on Oly's promise to supply it with Oly's Products and opened a second retail store for the specific purpose of selling the Oly's Products, signing a six-year lease for retail space and ordering an amount of Oly's product that was significantly higher than it would have purchased had plaintiff operated only one retail store.

63.    Oly should have reasonably expected that its promise to plaintiff to supply it with Oly's Products in exchange for the payment of a price fixed by Oly might induce plaintiff to expand its retail operations.

64.    Oly broke its promise to supply plaintiff with Oly's Product by terminating its business relationship with plaintiff without notice, effectively extinguishing plaintiff's business of selling Oly's Products.

65.     Plaintiff relied on Oly's promise to its detriment because plaintiff signed a six-year lease and ordered an amount of Oly's product that was significantly higher than it would have purchased had plaintiff operated only one retail store, which plaintiff would not have done if Oly had not promised to supply it with the Product.

66.     The promise by Oly to plaintiff is binding and injustice may only be avoided by enforcement of the promise.

67.     Accordingly, Oly is liable to plaintiff for its detrimental reliance in an amount to be determined at trial, but not less than $10,000,000.00, plus interest, costs and reasonable attorneys' fees.

## AS AND FOR A SEVENTH CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH COMMERCIAL RELATIONS
## AGAINST DEFENDANT MECOX ONLY

68.     Plaintiff repeats and realleges the allegations contained hereinabove.

69.     Mecox has engaged in an unlawful contract, agreement, arrangement, conspiracy and combination purposely to induce or otherwise cause third parties not to enter into or continue business relations with plaintiff, without privilege to do so.

70.     Plaintiff was harmed by Mecox's tortious interference with plaintiff's commercial relations with Oly as evidenced by Oly's discontinuance of business relations with plaintiff which was induced or caused by Mecox.

71.     Accordingly, Mecox is liable to plaintiff for tortious interference with commercial relations in an amount to be determined at trial, but not less than $10,000,000.00, plus interest, costs and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that:

A.      As and for the 15 U.S.C. §1 and § 2 violations of the Sherman Antitrust Act stated above, that the Court award Plaintiff treble damages in an amount to be proven at trial but not less than $30,000,000.00, plus interest, costs and reasonable attorneys' fees.

B.      As and for the New York State General Business Law § 340 violations of the Donnelly Act stated above, that the Court award Plaintiff treble damages in an amount to be proven at trial but not less than $30,000,000.00, plus interest, costs and reasonable attorneys' fees.

C.      As and for defendant's Breach of Contract, that the Court award Plaintiff damages in an amount to be proven at trial but not less than $10,000,000.00, plus interest, costs and reasonable attorneys' fees.

D.      As and for defendant's liability for plaintiff's Detrimental Reliance, that the Court award Plaintiff damages in an amount to be proven at trial but not less than $10,000,000.00, plus interest, costs and reasonable attorneys' fees.

E.      As and for defendant's Tortious Interference with Commercial Relations, that the Court award Plaintiff damages in an amount to be proven at trial but not less than $10,000,000.00, plus interest, costs and reasonable attorneys' fees.

### JURY TRIAL DEMANDED

Plaintiff respectfully demands a jury trial as to all issues.

Dated: New York, New York
       July  , 2007

                                        THE S.A. JACKSON LAW FIRM, P.C.
                                        Attorneys for Plaintiff


                                        By: _____
                                             Stuart A. Jackson

70 East 55th Street
New York, New York 10022
(212) 755-0500