UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
HABITAT, LTD.,

                            Plaintiff,      **MEMORANDUM AND ORDER**
                                             07-CV-2883 (DRH)(ARL)

    v.

THE ART OF THE MUSE, INC. d/b/a OLY
STUDIO and MECOX GARDENS &
POTTERY, INC.,

                            Defendants.
----------------------------------------------------------X
A P P E A R A N C E S:

For the Plaintiff:
S.A. Jackson Law Firm, P.C.
70 East 55th Street
New York, New York 10022
By: Stuart A. Jackson, Esq.

For the Defendant The Art of the Muse, Inc. d/b/a/ Oly Studio:
Phelps Dunbar LLP
100 South Ashly Drive
Suite 1900
Tampa, FL 33602
By: Jolee Land, Esq.

Patterson, Belknap, Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
By: Sarah E. Zgliniec, Esq.

For the Defendant Mecox Gardens & Pottery, Inc.:
Jones Day
222 East 41st Street
New York, NY 10017
By: Tracy Victoria Schaffer, Esq.

**HURLEY, Senior District Judge**:

        Plaintiff Habitat, Ltd. ("Plaintiff") brings this antitrust suit against defendants The

Art of the Muse, Inc. d/b/a Oly Studio ("Oly") and Mecox Gardens & Pottery, Inc. ("Mecox") (collectively, "Defendants").  The Complaint asserts seven Causes of Action.  The First, Second and Fourth Causes of Action are asserted against both Defendants; the Third and Seventh Causes of Action are asserted against Mecox only, and the Fifth and Sixth Causes of Action are asserted against Oly only.

Oly moves to dismiss the First, Second, Fourth and Fifth Causes of Action for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  Oly also moves for a more definitive statement pursuant to Rule 12(e) as to the Fifth Cause of Action, and to strike Plaintiff's demand for exemplary damages and attorneys' fees under the Fifth and Sixth Causes of Action.  Mecox moves to dismiss the First, Second, Third, Fourth and Seventh Causes of Action pursuant to Rule 12(b)(6).  For the reasons that follow, Defendants' motions to dismiss the First, Second and Third Causes of Action – the federal antitrust claims – are granted.  The Court declines to exercise supplemental jurisdiction over the remaining state law claims.

## *BACKGROUND*

In crafting the following summary of facts, the Court accepts all of the factual allegations in the Complaint as true.

Plaintiff is a domestic retailer of antique and faux antique furniture in Suffolk County, New York.  Plaintiff has operated an antique furniture retail store in Water Mill, New York for more than ten years (the "Original Store").  Plaintiff entered the faux antique furniture retail market three years ago.  Plaintiff recently opened up a second retail store in Suffolk County in Bridgehampton (the "New Store").

Oly is a manufacturer and distributor of faux antique furniture.  For more than

three years, Plaintiff and other faux antique furniture dealers in Suffolk County have purchased Oly's products. In fact, Plaintiff has dealt "almost exclusively with Oly with regard to the purchase of faux antique furniture for resale to consumers in Suffolk County, NY." (Compl. ¶ 13.)

Plaintiff first began selling Oly furniture in 2004. According to Plaintiff, Oly's faux antique furniture is one of a kind:

> Oly is an industry leader for the manufacture and distribution of faux antiques furniture because of the superior design, reasonable price and quality of its Products. Oly's Products are highly-sought-after pieces in the current market. Oly's Products are a fresh blend of clean lines and antique motifs synchronizing traditional with contemporary. Oly's Products are hand crated, unique and are considered a 'must-have' for any serious retailer or decorator of faux antique furniture in the current market; in fact defendant's Products make a market in and of themselves. No other company rivals the quality, pricing or the extent of Oly's Products. . . . .

(*Id.* ¶ 15.)

In 2004, Plaintiff ordered $21,744.54 worth of merchandise from Oly. In 2005, Plaintiff ordered $18,613.12 worth of merchandise from Oly. "Due to the popularity of Oly's Products at its Original Store . . . and relying to its detriment on the promise by Oly to [Plaintiff] that Oly would supply it with Oly's Products, [Plaintiff] in 2006 prepared to open [the] New Store exclusively for Oly's products . . . ." (*Id.* ¶ 18.) Plaintiff signed a six-year lease at the total cost of $400,000 and renovated the space for an additional $250,000 plus insurance costs to operate the New Store for the exclusive sale of Oly's products.

In January 2007, Plaintiff placed an order for $27,670.91 of Oly's products for the New Store. On January 28, 2007, Plaintiff's President met with Oly's Director and informed

3

him that Plaintiff was opening a New Store for Oly's products and would soon be ordering an additional $100,000 worth of Oly's products to stock the New Store. Oly's Director responded that "he would have to secure permission from third-party Mecox in order to continue to sell Oly's Products to [Plaintiff]." (*Id.* ¶ 21.) Mecox is large retailer of home furnishings, including Oly furniture, operating at least seven retail stores nationwide, two of which are located in Suffolk County. Mecox is alleged to be Oly's largest or one of Oly's largest accounts and purchases a significant amount of Oly furniture for resale to consumers in Suffolk County.

On March 9, 2007, after consulting with Mecox and before Plaintiff could place any additional orders with Oly, Oly sent a letter to Plaintiff terminating their business relationship effective that date. As a result of the termination, Plaintiff was forced to exit the business of selling faux antique furniture at its retail stores and was caused a great loss of current and future revenue.

Plaintiff alleges that the intent of Defendants' actions in "boycotting" Plaintiff was to maintain their monopolistic power over the Suffolk County market for faux antique furniture, or alternatively, Oly furniture; to use their enormous market power to prevent competition in Suffolk County; to drive Plaintiff out of the faux antique furniture business; and to discourage other retailers in the faux antique furniture business from expanding. Plaintiff further alleges that Defendants' actions have harmed consumers in Suffolk County "in that consumers have less market options for the purchase of Oly's Products because [P]laintiff, a retail competitor of Mecox has been forced out of the business of selling Oly's Products in Suffolk County, NY and other small competitors in that locality may not seek to purchase larger orders of Oly products for resale for fear of having their purchase agreements similarly

4

terminated." (*Id.* ¶ 31.)

The Complaint asserts seven causes of action, to wit: (1) Defendants committed a per se violation of Section 1 of the Sherman Act (15 U.S.C. § 1); (2) Defendants violated Section 1 of the Sherman Act under the rule of reason; (3) Mecox violated Section 2 of the Sherman Act (15 U.S.C. § 2); (4) Defendants violated the Donnelly Act (N.Y. Gen. Bus. L. § 340); (5) breach of contract against Oly; (6) detrimental reliance against Oly; and (7) tortious interference with commercial relations against Mecox. Both Oly and Mecox have filed motions to dismiss. For the reasons stated below, Defendants' motions are granted.

## *DISCUSSION*

### I. *Motion to Dismiss: Legal Standards*

A complaint is subject to dismissal under Rule 12(b)(6) where it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The test is whether the plaintiff is entitled to offer evidence to support her claim, not whether he is ultimately likely to prevail. *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998). A court must liberally construe the claims and "accept[] all factual allegations in the complaint and draw[] all reasonable inferences in the plaintiff's favor." *ATSI Commcn's, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court recently addressed the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6). In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41 (1957) that "a complaint

should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46. Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." 127 S. Ct. at 1974.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 1964-65 (citations and internal quotation marks omitted).

The Second Circuit has stated that *Twombly* does not require a universally heightened standard of fact pleading, but "instead requir[es] a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). In other words, *Twombly* "'require[s] enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 127 S. Ct. at 1974).

**II.** *Plaintiff's Claims Under Section 1 of the Sherman Act (the First and Second Causes of Action) are Dismissed*

    **A.** *The Requirement that Plaintiff Plead an Adverse Effect on Competition in the Relevant Market*

Section 1 of the Sherman act proscribes "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several

6

States, or with foreign nations." 15 U.S.C. § 1. Thus, to state a Section 1 claim, a plaintiff must establish: "[1] a combination or some form of concerted action between at least two legally distinct economic entities that [2] constituted an unreasonable restraint of trade either per se or under the rule of reason." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 109 (2d Cir. 2002) (citations and internal quotation marks omitted).

Here, Plaintiff's First Cause of Action alleges that Defendants' restraint of trade constituted a per se violation under Section 1. In response to Defendants' motions to dismiss, Plaintiffs have withdrawn this claim. Accordingly, Plaintiff's First Cause of Action is hereby dismissed.

Plaintiff's Second Cause of Action alleges that Oly's agreement with Mecox to restrain the trade of Oly furniture in Suffolk County constituted an unreasonable restraint of trade in violation of Section 1 under the rule of reason. The rule of reason analysis "seeks to determine if the alleged restraint is unreasonable because its 'anticompetitive effects outweigh its procompetitive effects.'" *E & L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 29 (2d Cir. 2006) (quoting *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 342 (1990)). Under the rule of reason, plaintiff bears an initial burden to show that "defendants' challenged behavior 'had an *actual* adverse effect on competition as a whole in the relevant market.'" *Geneva Pharm. Tech. v. Barr Labs. Inc.*, 386 F.3d 485, 506-07 (2d Cir. 2004) (quoting *Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 543 (2d Cir. 1993)); *see also E & L Consulting*, 472 F.3d at 28 (stating that an injury to competition is an element of a prima facie Section 1 claim). "Because the antitrust laws protect competition as a whole, evidence that plaintiffs have been harmed as individual competitors will not suffice." *Geneva Pharm. Tech.*,

7

386 F.3d at 507. It is axiomatic that "'[t]he antitrust laws . . . were enacted for the protection of *competition*, not *competitors*.'" *Paycom Billing Servs. v. Mastercard Int'l, Inc.*, 467 F.3d 283, 290 (2d Cir. 2006) (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)).

If plaintiff satisfies its initial burden and demonstrates that the defendants' actions had an actual adverse effect on competition as a whole in the relevant market, "the burden shifts to the defendants to offer evidence of the pro-competitive effects of their agreement." *Geneva Pharm. Tech.*, 386 F.3d at 507. "Assuming defendants can provide such proof, the burden shifts back to the plaintiffs to prove that any legitimate competitive benefits offered by defendants could have been achieved through less restrictive means." *Id.* "Ultimately, the factfinder must engage in a careful weighing of the competitive effects of the agreement-both pro and con-to determine if the effects of the challenged restraint tend to promote or destroy competition." *Id.*

### B. *Plaintiff Fails to Allege an Adverse Effect on Competition in the Relevant Market*

Here, the Complaint alleges a vertical restraint between a manufacturer (Oly) and a distributor (Mecox).[1] Essentially Plaintiff alleges that Oly terminated its distribution agreement with Plaintiff at the behest of Mecox, a national distributor of Oly furniture. Defendants argue that Plaintiff's Section 1 claim fails as a matter of law because the only harm alleged in the Complaint was harm to Plaintiff and not to competition in the relevant market. For

---

[1] "Restraints imposed by agreement between competitors have traditionally been denominated as horizontal restraints, and those imposed by agreement between firms at different levels of distribution as vertical restraints." *Business Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 730 (1988).

8

the reasons that follow, the Court agrees. The Court begins its analysis with a discussion of relevant Second Circuit case law.

    1.    *Second Circuit Case Law on Harm to Competition*

A plaintiff can allege an adverse effect on competition in one of two ways. First, it can plead an actual adverse effect on competition by alleging "reduced output, increased prices and decreased quality." *Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 264 (2d Cir. 2001). Alternatively, it can plead adverse effect indirectly by alleging that defendants "had sufficient market power to cause an adverse effect on competition.'" *Id.* at 265 (quoting *Top Mkts, Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 96 (2d Cir. 1998)). "Market power is defined as 'the ability of a single seller to raise price[s] and restrict output.'" *Id.* (quoting *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 464 (1992)).

In *Elecs. Commc'ns. Corp. v. Toshiba Am. Consumer Prods., Inc.*, 129 F.3d 240 (2d Cir. 1997), the plaintiff alleged that it entered into an agreement with defendant Toshiba America Consumer Products, Inc. ("Toshiba") whereby plaintiff became a distributor of Toshiba-brand cellular phones in the United States. Prior to this alleged agreement, these cellular phones were sold in the United States exclusively by defendant Audiovox Corp. ("Audiovox") under the Audiovox name. *Id.* at 241.

Plaintiff further alleged that when Audiovox learned of Toshiba's plan to distribute phones under the Toshiba brand name through other distributors, Audiovox threatened to use economic and political pressure to deter Toshiba. Despite repeated reassurances to plaintiff that the relationship would continue, Toshiba thereafter terminated its agreement with plaintiff. *Id.* at 242.

9

Finding that plaintiff failed to allege how the agreement between Toshiba and Audiovox reduced competition in the market for cellular phones, and noting that the Toshiba phones were still on the market, albeit under the Audiovox brand name, the district court granted defendants' Rule 12(b)(6) motion and dismissed the case. *Id.* On appeal, the Second Circuit affirmed, finding as follows:

> [Plaintiff's] allegations, if true, establish nothing more than that Audiovox sought to preserve its role as an exclusive distributor of Toshiba phones, a role it played for many years before Toshiba tried to distribute Toshiba-brand phones through [plaintiff]. This is a so-called vertical restraint. . . .
>
> To state a claim under section 1, it is not enough merely to allege that, as a result of the agreement between Toshiba and Audiovox, Toshiba-brand cellular phones no longer compete against Audiovox-brand cellular phones. The fact remains that the dispute involves one manufacturer's product, Toshiba cellular phones. Although two brand names are involved, this is essentially a dispute about the way one product is distributed, a question of intrabrand competition. . . . [A]n actual adverse effect on interbrand competition is not established merely because an agreement removes from the marketplace one brand name under which a manufacturer's products are sold.
>
> Nor is it a violation of the antitrust laws, without a showing of an actual adverse effect on competition market-wide, for a manufacturer to terminate a distributor like [plaintiff] and to appoint an exclusive distributor. . . . *see also Burdett Sound, Inc. v. Altec Corp.*, 515 F.2d 1245, 1249 (5th Cir. 1975) ("Lest any other former distributors succumb to the temptation of treble damages, we reiterate that it is simply not an antitrust violation for a manufacturer to contract with a new distributor, and as a consequence, to terminate his relationship with a former distributor, even if the effect of the new contract is to seriously damage the former distributor's business.") . . . . [T]he allegations in [plaintiff's] complaint establish nothing more than a run-of-the-mill exclusive distributorship controversy, where a former exclusive distributor is attempting to protect its competitive position vis a vis its supplier. Such exclusive distributorship arrangements are presumptively legal.

The allegations in [plaintiff's] complaint, if true, do not establish that the agreement between Audiovox and Toshiba adversely affects market-wide competition. [Plaintiff] rests its entire case on the fact that the Toshiba name will no longer be available in the cellular telephone market, calling this a reduction in output of Toshiba phones that benefits only Audiovox. Toshiba phones, however, will still be available, presumably in whatever number is demanded by consumers. The complaint does not allege how Audiovox could sensibly reduce its sales of the phones and increase its prices. The allegations show, at most, a slight reduction in competition between Audiovox and Toshiba regarding the distribution of Toshiba-manufactured phones. It is settled, however, that to sustain a section 1 claim, a plaintiff must . . . show more than just an adverse effect on competition among different sellers of the same product. . . .

Although competition from Toshiba could deter Audiovox from attempting to increase its margin on Toshiba phones by increasing price, the Toshiba-[plaintiff] endeavor was very limited in scope and would have had only a limited effect on Audiovox sales. In any event, ECC has not alleged how this slight reduction in intrabrand competition affects the market as a whole, given the continuing presence of Toshiba phones in the market-in whatever number consumers demand-and the lack of an allegedly anticompetitive agreement between Toshiba or Audiovox and their competitors.

. . . .

While Audiovox very well may have brought pressure to bear on Toshiba to preserve its role as an exclusive distributor of Toshiba products, that is not illegal without more. In the absence of price-fixing, agreements to terminate distributors, even at the behest of competing distributors who seek to maintain exclusive distribution rights, have repeatedly been sanctioned by the courts. . . . [citing cases] Manufacturers must enjoy some freedom to determine how to distribute their products without subjecting themselves to attack under the antitrust laws by disappointed distributors, absent activity that is manifestly anticompetitive. The fact that a distributor applies pressure to preserve its exclusive role does not alone raise special antitrust concerns.

As we reasoned in *Capital Imaging Assocs., P.C. v. Mohawk*

> *Valley Med. Assocs., Inc.*, 996 F.2d 537, 543 (2d Cir. 1993), "[i]nsisting on proof of harm to the whole market fulfills the broad purpose of the antitrust law that was enacted to ensure competition in general, not narrowly focused to protect individual competitors." While [plaintiff's] allegations suggest that it was harmed by Toshiba's decision to terminate it as a distributor, they do not show that the agreement threatens to harm overall competition in the cellular telephone market.

*Id.* at 243-246 (citations and internal quotation marks omitted).

Similarly, in *E & L Consulting*, the plaintiff was the distributor of green hem-fir lumber in New York, New Jersey, and Pennsylvania for defendant Doman Industries Limited ("Doman") and a Doman subsidiary.[2] Doman and its subsidiary supplied 95 percent of the green hem-fir lumber sold in New York, New Jersey, Pennsylvania, as well as other locations. 472 F.3d at 26.

Doman thereafter terminated its relationship with plaintiff and notified its customers that Sherwood Lumber Corp. ("Sherwood") had become its exclusive distributor in the areas previously served by plaintiff. *Id.* at 27. Alleging that there were no commercially feasible alternative sources of green hem-fir lumber, plaintiff and the companies it did business under ("plaintiffs") brought an antitrust suit against Doman and Sherwood, which moved to dismiss the complaint under Rule 12(b)(6). *Id.* The district court granted defendants' motion, finding that the complaint failed to adequately allege a relevant product market or injury cognizable under the antitrust laws. *Id.* at 28. The Second Circuit affirmed.

Analyzing plaintiffs' Section 1 claims under the rule of reason, the Circuit found that:

---

[2] Green hem-fir lumber is an inexpensive, durable wood that is often used for homebuilding. *See E & L Consulting*, 472 F.3d at 26.

12

[Plaintiffs] allege . . . the exclusive distributorship with Sherwood further harms competition. However, [plaintiffs'] hypothesizing of an unreasonable effect on competition fails because such a vertical arrangement provides no monopolistic benefit to Doman that it does not already enjoy and would not continue to enjoy if the exclusive distributorship were enjoined. To put it another way, had Doman established its own in-house distribution system with the same monopoly that Sherwood is alleged to possess, there would have been no increase in the restriction of output of green hem-fir lumber and in the resultant misallocation of resources.

Indeed, an exclusive distributorship would be counterproductive so far as any monopolization goal of Doman is concerned. A monopolist manufacturer of a product restricts output of the product in order to maximize its profits. The power to restrict output to maximize profit is complete in the manufacturing monopoly, and there is no additional monopoly profit to be made by creating a monopoly in the retail distribution of the product. On the contrary, a firm with a monopoly at the retail distribution level will further reduce output to maximize its profits, thereby reducing the sales and profit of the monopoly manufacturer. Like any seller of a product, a monopolist would prefer multiple competing buyers unless an exclusive distributorship arrangement provides other benefits in the way of, for example, product promotion or distribution. In fact, we have explicitly noted that a vertically structured monopoly can take only one monopoly profit.

The only detriment to competition alleged to result from the Doman-Sherwood agreement is that "end-users of lumber and finished wood products have fewer options to purchase their required supplies and are now required to pay artificially inflated prices." This, by itself, is not a sufficient allegation of harm to competition caused by the exclusive distributorship, again, because the alleged single source and price increase, even if monopolistic, is something Doman can achieve without the aid of a distributor.

Thus, we have noted that "exclusive distributorship arrangements are presumptively legal." *Elecs. Commc'ns. Corp.*, 129 F.3d at 245. . . .

*Id.* at 29-30 (internal citations and quotation marks omitted)[3]; *see also Re-Alco Indus., Inc. v. Nat'l Ctr. for Health Educ., Inc.*, 812 F. Supp. 387, 392 (S.D.N.Y. 1993) ("An exclusive distributorship agreement between a manufacturer and a distributor causing harm to another distributor is not, standing alone, sufficient to show antitrust injury. . . . The intent to harm a particular competitor is not actionable, even if a distributor-competitor is put out of business.").

### 2. *Application to Plaintiff's Allegations*

This case is directly analogous to *Elecs. Commc'ns. Corp.* and *E & L Consulting*. Similar to those cases, Plaintiff alleges that Oly and Mecox entered into an agreement to black list Plaintiff from selling Oly furniture. Plaintiff then attempts to convert its individual injury into an injury to consumers, alleging that:

> Defendants' actions have harmed consumers in Suffolk County, NY in that consumers have less market options for the purchase of Oly's Products because plaintiff, a retail competitor of Mecox has been forced out of the business of selling Oly's Products in Suffolk County, NY and other small competitors in that locality may not seek to purchase larger orders of Oly products for resale for fear of having their purchase agreements similarly terminated. . . .

(Compl. ¶ 31.) Even if the Court were to accept that the sale of Oly furniture in Suffolk County created a market in and of itself[4] the Complaint fails to adequately allege harm to competition in

---

[3] Citing *Geneva Pharms,*, 386 F.3d 485, the Circuit noted that it has "never held that all exclusive arrangements are reasonable as a matter of law." 472 F.3d at 30. However, plaintiff has not argued, nor could it, that *Geneva Pharms.* is applicable to its case. *See id.* (distinguishing *Geneva Pharms.* as a case involving "an allegation of two temporary, related monopolies in different products, a drug and its active ingredient[;] Moreover, the two firms, which had overlapping ownership, were jointly involved in predatory practices designed to extend their respective temporary monopolies by deterring entry by competitors.").

[4] Although Plaintiff's Complaint can be construed as alleging the relevant market to be both the faux antique furniture market in Suffolk County as well as only Oly furniture in Suffolk County, in its opposition papers, Plaintiff limits the relevant market to the latter. In essence,

14

this market. Plaintiff's claim was squarely rejected in *E & L Consulting* where the Circuit found that just because "end-users" had fewer purchase options and were required to pay artificially inflated prices, a harm to competition was not alleged: "[T]he alleged single source and price increase, even if monopolistic, is something [Oly] can achieve without the aid of a distributor." 472 F.3d at 30.

Here, Plaintiff does not even allege that Suffolk County consumers will be required to pay higher prices. Instead, Plaintiff only alleges that these consumers will be unable to purchase Oly furniture through Plaintiff and other small competitors who "may not seek to" do business with Oly for fear of having their agreements terminated. Plaintiff does not dispute, however, that these consumers will still be able to purchase Oly furniture through Mecox, a nationwide distributor with two stores in Suffolk County. Simply put, the fact that consumers can no longer purchase Oly furniture from Plaintiff or other hypothetical small retailers does not amount to an injury to competition as a whole. *See Floors-N-More, Inv. v. Freight Liquidators*, 142 F. Supp. 2d 496, 502 (S.D.N.Y. 2001) ("The fact that customers can no longer purchase Ashley furniture products (or products from Hickory or Stanley) at Floors-N-More does not mean that competition has been harmed. For instance, plaintiffs have not alleged that Freight Liquidators is now the only store in the geographic market where customers can purchase products made by the manufacturers, or that prices for the manufacturers' furniture have been affected.").

---

Plaintiff argues that Oly furniture is a market in and of itself due to its uniqueness. In moving to dismiss, Defendants argue that not only does the Complaint fail to allege an adverse effect on competition in the relevant market, but that it also fails to adequately define the relevant market. Because the Court finds the Complaint deficient with respect to the former argument, it need not, and does not, address whether Plaintiff's market allegations are sufficient.

15

In its opposition papers, Plaintiff attempts to distinguish *E & L Consulting* as follows:

> While it may be true that there is no additional profit in creating a monopoly in the retail distribution of a product in said restricted market, if a manufacturer agrees to the request of a retailer that has retail stores nationwide to stop the sale of the manufacturers' product to the competitor of the national retailer in a specific geographic market in exchange for the national retailer's promise to increase its purchase of the manufacturer's products at its other locations in its several geographic markets, then the manufacturer could receive an additional profit – an increase in the sale of its product nationally over and above any losses it incurred by restricting the sale of its product in one geographic market – in creating a monopoly for the retail distribution of its product by restricting certain geographic market.

(Pl.'s Mem. of Law in Opp'n to Oly's Mot. at 10-11.) Although Plaintiff concedes that "this situation has not to Plaintiff's knowledge been brought before this Court," Plaintiff urges that the *E & L Consulting* decision be limited so as not to apply to this case. (*Id.* at 11.)

The Court finds that Plaintiff's attempt to distinguish *E & L Consulting* is unavailing. Applying Plaintiff's hypothetical example, which is not pled in the Complaint, to the facts of this case, Plaintiff essentially argues that the agreement between Oly and Mecox harms competition as a whole in the Oly furniture market in Suffolk County because Mecox, a national distributor, agreed to purchase more Oly furniture for distribution at its other locations nationwide in exchange for Oly's promise to terminate its agreement with Plaintiff, a local Suffolk County distributor. In other words, consumers in Suffolk County are injured because the sale of Oly furniture in that locale is limited, presumably because Plaintiff is no longer able to sell Oly furniture there. The Court fails to see how Plaintiff's hypothetical removes Plaintiff's claim from the purview of *E & L Consulting*. The scenario proposed by Plaintiff – manufacturer

16

terminates agreement with local distributor and enters into exclusive relationship with nationwide retailer to ensure broad distribution of its product – is exactly what the *E & L Consulting* case, as well as the *Elecs. Commc'ns. Corp.* decision, contemplated as an acceptable, legal business relationship. At the end of the day, Plaintiff's proposed hypothetical boils down to the same claim rejected repeatedly in the governing case law, to wit, simply because Suffolk County consumers can no longer purchase Oly furniture from Plaintiff does not mean that competition as a whole has been adversely affected. Moreover, as noted in *E & L Consulting*, there is no anticompetitive incentive for a manufacturer to create a monopoly in retail distribution of its product. 472 F.3d at 30 (noting that "[t]here is no additional monopoly profit to be made [for a monopolist manufacturer] by creating a monopoly in the retail distribution of the product").

In sum, the court finds that Plaintiff's allegations do not satisfy the requirement that Plaintiff demonstrate market-wide injury to competition. As in *Elecs. Commc'ns. Corp.* and *E & L Consulting*, Plaintiff's allegations are "a run-of-the-mill exclusive distributorship controversy, where a former . . . distributor is attempting to protect its competitive position vis a vis its supplier." *E & L Consulting*, 472 F.3d at 31; *Elecs. Commc'ns. Corp.*, 129 F.3d at 245. Since "exclusive distributorship arrangements are presumptively legal," *Elecs. Commc'ns. Corp.*, 129 F.3d at 245, it was incumbent on Plaintiff to plead further facts plausibly suggesting an adverse effect on competition in the relevant market. Plaintiff has failed to do so. Accordingly, Plaintiff's First and Second Causes of Action alleging violations of Section 1 of the Sherman Act are dismissed.

**III.** *Plaintiff's Claim Under Section 2 of the Sherman Act (the Third Cause of Action) is Dismissed*

Plaintiff's third cause of action asserts a violation of Section 2 of the Sherman Act against Mecox only. Section 2 provides that a person shall not "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize . . . ." 15 U.S.C. § 2. "A viable claim under Section 2 challenging a distributorship agreement must, like a Section 1 claim, show a harm to competition." *E & L Consulting*, 472 F.3d at 31; *see also Elecs. Commc'ns. Corp.*, 129 F.3d at 246 ("The agreement between Audiovox and Toshiba cannot harm competition, and therefore cannot serve to further an alleged monopolization scheme."). Because Plaintiff has failed to allege a harm to competition, its Section 2 claims are dismissed as well.

**IV.** *Leave to Amend is Denied*

Plaintiff does not move for leave to amend, either formally or informally, with regard to its federal antitrust claims. In fact, its brief makes no mention of it. Although this Court would well be within its discretion to deny leave to amend on that ground alone, *see Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1132 (2d Cir. 1994)[5] ("Although federal courts are inclined to grant leave to amend following a dismissal order, we do not deem it an abuse of the district court's discretion to order a case closed when leave to amend has not been sought."), the Court notes that leave to amend is also not warranted in this case because any amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (futility of amendment ground

---

[5] The *Shields* decision was superseded by statute on other grounds, Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4, as recognized in *In Re Paracelsus Corp. Sec. Litig.*, 61 F. Supp. 2d 591, 595 (S.D. Tex. 1998).

for denial of motion). Here, Plaintiff has not provided the Court with, or suggested the existence of, any new facts which could cure its pleading deficiencies. *Compare In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187, 220 (2d Cir. 2006) ("It is within the court's discretion to deny leave to amend implicitly by not addressing the request when leave is requested informally in a brief filed in opposition to a motion to dismiss. . . . Furthermore, where amendment would be futile, denial of leave to amend is proper.") (citation omitted); *Porat v. Lincoln Towers Community Assoc.*, 464 F.3d 274, 276 (2d Cir. 2006) ("A counseled plaintiff is not necessarily entitled to a remand for repleading whenever he has indicated a desire to amend his complaint, notwithstanding the failure of plaintiff's counsel to make a showing that the complaint's defects can be cured."). As discussed more fully above, Plaintiff's allegations – which arise solely out of Oly's termination of its distribution agreement with Plaintiff – fail to allege harm to competition in a manner that the antitrust laws were meant to guard against. Accordingly, although no applications have been made, the Court declines to grant Plaintiff leave to amend its federal antitrust claims.

**V.     *Plaintiff's State Law Claims are Dismissed Without Prejudice***

Having found that Plaintiff's federal claims fail as a matter of law, there is no longer any independent basis for federal jurisdiction. Although the Court has the discretion to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, *see* 29 U.S.C. § 1367(a), it declines to do so as resolution of the state claims would require the determination of additional factual and legal issues. *See* 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); *N.Y. Mercantile Exch., Inc. v.*

19

*IntercontinentalExchange, Inc.*, 497 F.3d 109, 119 (2d Cir. 2007) ( holding that dismissal of remaining state claims after the dismissal of federal claims is particularly appropriate where the resolution of the state law claims entails resolving additional legal and factual issues), *cert. denied*, 128 S. Ct. 1669 (2008). "Since [New York CPLR § 205] allows a plaintiff to recommence a dismissed suit within six months without regard to the statute of limitations, plaintiff[] will not be prejudiced by the dismissal of [its state law] claims." *Tishman v. The Associated Press,* 2007 WL 4145556, at *9 (S.D.N.Y. Nov. 19, 2007) (citations and internal quotation marks omitted). Accordingly, Plaintiff's state law claims are dismissed without prejudice.

## *CONCLUSION*

For the foregoing reasons, Defendants' motions to dismiss the Complaint are GRANTED. The First, Second, and Third Causes of Action are hereby dismissed WITH PREJUDICE. The remaining state law claims are dismissed WITHOUT PREJUDICE. Oly's motion for a more definitive statement and to strike Plaintiff's demand for exemplary damages and attorneys' fees under Plaintiff's state law causes of action is dismissed without prejudice to renew in state court. The Clerk of the Court is directed to close this case.

**SO ORDERED**
Dated: Central Islip, NY
March 25, 2009

/s_____
Denis R. Hurley,
United States District Judge